May it please the court, Eric Guzman, federal defenders, I'm asking for Mr. Garcia. Mr. Garcia was surrounded by officers, ordered out of his car, yelled at, commanded to walk backwards with his hands up, handcuffed, forced into the back of a police car, separated from his companion. This was all done without probable cause, which requires reversal from the district court. Whoa, whoa, wait a minute. Wait a minute. Wait a minute. There was a stop. There was a rest stop. There was a stop. Yes, sir. Now, was the stop appropriate? No, Your Honor. Oh, because they couldn't even stop the pickup truck? Well, the manner of the stop was unreasonable, and it was perhaps... That's what I want to understand. Let's hit off the drama and just talk about the facts of the case. What we have here is a passenger who's being interrogated in a passenger car. I mean in a patrol car. That's where your problems come in as far as the evidence that's solicited. So let's go back to the stop. My understanding was that there was reasonable suspicion to believe that this car or truck had been stolen and that the blocking maneuver that the officer used was appropriate, and the issues you were addressing had to do with what happened after he was put into the car. But you're saying they had to have probable cause to stop the car in the first instance, or the truck? Not at the initial detention, Your Honor, but the situation escalates where more and more coercive factors are used to the point where what may have begun as an investigative detention is transformed into an arrest. Right. That's what I'm trying to... That's what I understood. Now, you're saying it transformed into an arrest as soon as he exited the car or the truck? At a minimum, Your Honor, it's turned into an arrest when Mr. Garcia is handcuffed and pushed into the back of the police car by himself. So at a minimum, he's under arrest without probable cause. And our case law, what's the case that supports that? Well, I think under BACA, we have to look, under Aguilar v. BACA, at the totality of the circumstances. And so many of the factors that this Court has cataloged that indicate that arrests have occurred are present in this case. For example, United States v. Washington, this Court held that when there's a threatening presence of several officers, that indicates a finding of arrest. That same case also pointed out that if there's no reasonable means of exit, that is a coercive factor that supports finding of arrest. Chan Jimenez held that when officers use firearms, there's a, quote, unequivocal show of authority present in this case. They were confronted with incriminating evidence when Sergeant Bowen yelled that the vehicle was stolen. He was separated from his companion. That Ron Panez in a Miranda context held that that's a coercive factor. Captain Texas held when someone's handcuffed, that is also something that indicates an arrest. So there's such an accumulation of coercive factors and such a powerful show of authority that there is no way any reasonable innocent person would feel that after only a brief period of questioning, he'd be free to leave. Well, I thought the district court found that he was, she found as a fact that she didn't think he would have understood he was free to leave. She just decided it was still part of the investigative stop. That's correct, Your Honor. Okay. Well, I'm just trying to figure out where you think you need to interject the arrest probable cause standard in order to prevail in your case. And if you're taking it all the way back to the stop or to the initial exiting from the truck, then you may be biting off more than you have to. But if that's what you want to do, go ahead. I agree. And I only want to bite off the area where he's finally handcuffed and forced in the back of the police car. Because if that's an arrest, then reversal would still be warranted. Okay. Now, what if we were to conclude that there was no arrest, that there was permissible part of the investigation and separation for officer safety to get him out of the truck while they cleared the truck, and the use of handcuffs we've also held in other cases is permissible for officer safety. They put him in the patrol car to isolate him from his partner while they're clearing the truck. What if we were to conclude that that didn't rise at that point to a level of arrest? Well, there would still be the issue of questions that were posed, likely to elicit incriminating responses, while he was in custody. All right. But if I could address the issue of officer safety, the cases the government cites for the proposition that there's an officer safety exception, rendering force that would otherwise be an arrest as reasonable are distinguishable from this case because the cases the government cites, specifically Gallegos and Allen, which stem from Buffington, all those cases, the officers had reasonable beliefs that there was a dangerous situation, that there was potential violence either towards themselves or to the public, and that was not present in this case. The only fear Sergeant Bowen states that he has is that he's afraid that the vehicle might go down an alley because that poses potential dangerous situations, or that the vehicle might not be aware that there was an officer behind it and he might back up into the patrol vehicle. So all his fears appear to be wrapped up in the operation of the vehicle, what that vehicle might do, where it might go, or what it might hit. But as soon as the car is immobilized, those fears are vitiated, and there's no longer the fear of officer safety, and especially when there's at least four armed officers with the distance of 20, 25 feet of Mr. Garcia while the driver's already handcuffed. Why did the district court conclude that use of guns, drawn guns, was appropriate until the situation was stabilized? Why do you say that there was no evidence of officer safety until they got the driver and passenger out of the truck? It's 4 a.m. in the morning in an alley area. Did he say he wasn't, that there was no fear of these guys possibly being armed or otherwise a danger to them? If I could take those questions in order, Your Honor. Sure. First, the district court judge found that it was 4 in the morning. The fact that she realized, the findings she made said it's early in the morning, it's in an alley, but it was not in the alley. Sergeant Bowen pinned the car down against the wall before it was able to get to the alley, which was the dangerous situation Sergeant Bowen sought to prevent, and that they don't know. She says he doesn't know how many people in the car. He's completely justified in calling for backup. It was justified that he used his, he pulled his firearm, and he was justified when Agent Castillo arrived. And perhaps that's the case, but after there's four officers, and they're all armed, and the driver is secured, and they walk back, and Officer Sinclair at page 58 of the Exeter record states that he has them both walk backwards meticulously to make sure that they're not armed, and didn't see anyone armed. At that point, they have four armed officers. There's no reasonable danger to anybody that justifies the additional coercion of handcuffing Mr. Garcia and putting him in the back of a police car alone. Okay. What if you lose on that? Now he's in the police car. Now what? Then there's the Moran issue. The district court judge found that he was the one. I don't want to play games. I mean, I'm just trying to understand. This is a very complicated case in some respects because of the Supreme Court precedent and what is now allowed on the issues of prolonged detention and whatever. So I think we probably understand your arguments about arrest and probable cause and all of that. So he's in the back of a police car sitting handcuffed. He's interrogated, questioned by the police officer, who is asking him information about his identity and the like. Meanwhile, they're clearing the truck, as I understand it, and at some point there's a records check on Garcia because he gives a name. He's asked for his identification. He's given a name. It turns out to be a false name and so on. And in the course of all of this unfolding, there are questions that you object to, which have to do with his illegal entry, his citizenship. Where do those come in the process, and how do those factor into what Manna, the Supreme Court has told us, says as long as the detention is not prolonged and the whole Terry line of cases suggests that if there is reasonable suspicion to justify some detention, where is it in this process that the line was crossed by the officers if it isn't crossed where you say it is with the escalating to the arrest? Focus on when he's in the car. Where does the line get crossed at that point in your view? I think that the temporal constraints set forth in the United States versus Mendez by this court is that they have to diligently pursue whatever the reason, whatever investigation justified the stop, which was in this case vehicle theft. And Agent Castillo doesn't ask Mr. Garcia any questions that relate to vehicle theft. They don't say, are you the owner of this car? Who's the owner? How'd you get the car? He immediately embarks on a citizenship investigation. Well, he asked him with identity. He gets into citizenship, but he's just trying to identify him, isn't he? I mean, you can identify someone by their name, social security number, but questions of your country of origin are completely divorced from identity, at least as it relates to vehicle theft. Counsel, Judge Gould, with a question for you. Is there any precedent from the Supreme Court or our court that addresses whether questions on alienage and country of origin are properly considered identity questions? So if someone's asked, what's your name, what's your birth date, is there any? And those are okay, I assume. Is there any case that says they cannot be asked, where are you from, are you here illegally, are you a citizen? If not, do you have a green card? Do we have any precedent that bears on that? I'm not sure I follow your question. The question is, do we have case law that says it was improper for the officer, as part of questioning about his identity, date of birth, name, social security, driver's license, to also ask him, where were you born, are you here legally? Is there any case law that says those are impermissible, that the latter two, as you've said, go beyond identity, are illegal questions, impermissible questions? No, Your Honor. But I believe if you join this issue up with the cases I cite for the Miranda issue, that certain cases, certain questions in the proper context are questions likely to elicit incriminating responses, and it shows that they are not only identity questions, they're now a new criminal investigation for which Agent Castillo had no reasonable suspicion and it extended the duration of the initial detention, which was based on reasonable suspicion of vehicle theft. Okay, well, the test in Mueller-Mayna, Mueller-Mayna, maybe it is, seems to be whether the questioning would unduly prolong the detention. So, like, a few questions, are you a citizen? Are you here legally? You know, any one question will extend it, but is that unduly extending it? In other words, if you look at it from the point of view of the time that it took to ask him those questions, is that de minimis or is it enough that it relates to a different crime, as contrasted with how much time would it take for him to answer it and be done with it? I believe the issue is that it spawns a new criminal investigation for which Agent Castillo had no reasonable suspicion and it prolongs the virtually nonexistent investigation into vehicle theft, which justified the detention to begin with. If I could briefly move on to the Miranda issue, Your Honor. I see that I'm running out of time. No, I'll give you some more time, but go ahead. The government recently provided a 28-J letter signing the recent case of Melendez-Dia, and I would just point out that the cases that that case relies on, they're all, except for one, are fill statement cases, and they cite Berkemer's plan on the public setting, and the holding in Melendez-Dia is really quite narrow, holding that if a Border Patrol agent stops a car based on reasonable suspicion that people are in the country illegally, they're allowed to use sufficient force for officer safety and ask questions about citizenship, but in this case, Your Honor, they were not seized because of a belief, a legal status in the United States it was for vehicle theft. Thank you, Your Honor. Good morning, Your Honors. May I please the Court? Robert Huey, on behalf of the United States. There is no reasonable dispute that the stop in this case was supported by reasonable suspicion, and as the district court found, the protective measures used by the police were reasonable. The district court may express finding that this was a dangerous situation. Okay, but let's get to, I think, what's probably troubling at least a couple of us, maybe all three of us, is the uncertainty in the law about the scope of questioning. Assuming you are correct that it was within the Terry stop purview to take him all the way back to the police car in handcuffs and sit him in the back seat, and that let's just assume arguendo that it didn't get to the arrest status, and that he is asking these questions, the district court was very focused on whether or not the questions were appropriate to the purposes of the stop in the first place and what was going on in his dissembling responses about his identification. Now, as I understand the unfolding of the events, he was held there for 25, I think the working assumption was, he was detained for roughly 25 minutes, and the officer asked him his name and his date of birth and his, I think, social security number or something like that, and was given a name, he couldn't remember his driver's license number, he couldn't remember, and he didn't have any identification. And at some point in the process, before, I believe, the officer then went to run the name that was given to run it on the computer, he asked him about where he was born. And I don't know if he ever asked if he was here illegally, I think that popped out at some point, but I think what Judge Gould's question was pinpointing is, what does the case law permit in a reasonable suspicion detention situation in terms of scope of questioning where the officer is getting into alienage and illegal reentry issues? That's the problem I see in this case as to whether or not the officer went beyond the bounds, subjectively, substantively, of legitimate questioning to get to identity. Against that, now, of course, we have to put Mena in the Supreme Court's discussion of undue prolongation, but I'm just trying to help us focus on what appears to be a process that is being followed in the San Diego area is to go after illegal aliens if they get stopped on something unrelated to alienage, you know, to their immigration status. Is this an opportunity to ask these questions? Your Honor, I think there are two elements to those questions. There's a Fourth Amendment element and a Moran element. I'd like to start with the Fourth Amendment element. Under the case law, the Mendez case and also Mueller v. Mena, separate reasonable suspicion is not required if one of two events occur. One, the questions are reasonably related to the purposes of the stop, or two, even if unrelated to the purposes of the stop, they don't unduly prolong the stop. So in this case, the questions were identity-related questions, which are reasonably related to any stop. Any stop includes the right that officers have to identify the person that they're dealing with. Now, in this case, the district court found that all the questions asked by Officer Castillo pertain to identity and that they were appropriate questions. Why did he need to ask about place of birth before he had run the computer to find out that the identity that he had given was a false identity? Because isn't the asking going into the citizenship area prolonging the inquiry? The situation in this case, Your Honor, was that Officer Castillo first asked the name, date of birth, and whether the defendant had any identification. He said he didn't. So that implicated a whole other series of questions. But he gave his name. He did give his name, but he didn't have any identification with him. And because he didn't, Officer Castillo testifies that in these cases, where someone doesn't have ID, he asks a number of follow-up questions. Now, how are these follow-up questions identity related? They're identity related because they go to basic biographical facts, biographical facts about which there may be information in a database somewhere. This is the kind of information that's kept, that's verifiable or unverifiable. Also, in asking these verifiable biographical questions, it creates a disincentive on the part of the person being questioned to fabricate a persona, because they have to fabricate more and more of a persona. Now, why Officer Castillo didn't run the records check immediately after asking the name, I don't know why he did that. The issue is whether he proceeded reasonably. And I think it was reasonable for him to gather up a certain basket of information, in this case dictated by the fact that the defendant didn't have anything to give him, and then go back and run the records check. So I think those questions did relate to identity, as the district court found. Even if they didn't, the district court separately found that they did not prolong the stop. That any prolongation of the stop was due to the defendant's evasive and false answers, and not to the questions asked by the officer. And I think it would be true speculation to conclude that the stop would have somehow ended earlier if the officer hadn't asked those few questions. In the Mueller v. Mana case, the woman was detained for two and a half to three hours. That was an incident to a warrant search that is focused on the whole pathway of drugs, and it was quite a different circumstance from this. That's correct, Your Honor, but the holding was if the questions don't prolong the encounter. Yes, but that was where there was a warrant. There was a high level of probability that criminal activity was afoot at that residence where she was an occupant or a resident. So I don't want to – let's not over-read Mana. See, my concern is that under this jurisprudence, if it evolves too loosely here, we are essentially giving carte blanche to the police to pull somebody over on a traffic stop, and they now figure they've got a space of time in which to engage in a free-form interrogation on citizenship status when it has nothing to do with the reason for the stop, nor is it really necessary for identity. You're saying the place of birth is part of the database. Where do you find place of birth in the database to check when you're running a name check? Well, to answer Your Honor's question, I don't know, and I don't know what information Officer Caspio had access to in his computer, but the fact is these are verifiable facts about a person. And if he doesn't have ready access to verify them, it may be that somebody else does, that he can make a call. And the very fact that someone is being questioned about objectively verifiable biographical facts is going to induce that person to be truthful about these identification questions. I'd also like to point out that in the Mendez case, and I think, Your Honor, Judge Gould might have alluded to this, there does seem to be perhaps a de minimis exception for prolonging a stop. In the Mendez case, certain questions were asked while the records check were being run. Those questions were held not to prolong the stop. But the incriminating questions in that case were asked after the records check had been completed. The officer that completed the check came back, immediately asked a couple questions. The answers to those were used against Mr. Mendez. In this case, they were elicited before the records check. In other words, he postponed the records check to engage in this biographical inquiry, as you characterize it. That is prolonging the stop. If the issue is to confirm identity, all he had to do was get the name, put it in the computer. If it pops up with the wrong information, then he can come back.  Well, Your Honor. He inverted the process, it seems. I think the touchstone in this case is reasonableness. And I think that it is reasonable in a situation where someone doesn't have identification for an officer to ask a number of questions, to gather up that bundle of information and then to run the records check. There is an additional case that I discovered very recently that I'd like to call to the Court's attention. It's United States v. Turvin. The citation is 517F31097. It's cited in 2008. This case bears upon the issue in the sense that it involves a traffic stop where the officer is writing a ticket. The officer is informed that the person stopped may be involved in some kind of drug. So he stops writing the ticket, pulls out a tape recorder and starts asking the individual questions about drugs. When he finishes, he puts the tape recorder away, gets his ticket pad and finishes writing the ticket. The Court in that case held that the question under Mendez and Mueller v. Mendez is not whether doing a time and motion study, a particular question postponed the duration of the termination of the stop by a little bit. The question is whether, viewed as a whole, the duration of the stop was reasonable or not. In this case, I think it was, and the Court found that it was. Turvin is a Ninth Circuit case? Yes, Your Honor. I'd also like to address the Miranda issue. The district court found that in this case, at the time the defendant was seated in the back of the parked patrol car, he was not in custody. Now, certainly at that point he wasn't free to leave, but there are lots of situations where someone is not free to leave, but for Miranda purposes, they're not in custody. That's been held by the Supreme Court in Bergamot v. McCarty, that in the normal course a Terry stop or traffic stop is not custody. And there are cases from this Court that hold that even taking reasonable protective measures don't convert a noncustodial stop into a custodial one. And that includes the Medina Via case that I cited in my 28J letter, in which the Border Patrol agent blocked into a car or ordered the driver out at gunpoint and questioned the occupants. Also, the United States v. Bautista case from 1982 that involved the use of handcuffs. Now, even if Mr. Garcia were found to be in custody, there's a further question for Miranda, whether the questions he was asked constitute interrogation. And as I mentioned, the Court found that these were identity-related questions that are appropriate to determine his identity. They were not being asked to gather information to incriminate Mr. Garcia. In the case of the United States v. Washington, which is more recent than any of the identity, interrogation-related cases that the defense has cited, this Court held that interrogation is words or actions on the part of police, other than those normally attendant to arrest and custody, that the police should know are reasonably likely to elicit an incriminating response. There are a couple ways in which the questions here aren't interrogation. The first is, in the event this Court were to find this encounter as custodial, those questions would be attendant to arrest and custody, the types of questions that can be asked. Well, that's debatable. I mean, they certainly are designed to elicit incriminating evidence. I'm sorry, Your Honor? Certainly, the place of birth and citizenship are certainly designed to elicit incriminating evidence. Well, Your Honor, I don't believe they are in this case. The Court found that they were appropriate questions to identify the defendant. There's no finding that or no evidence that Officer Castillo was trying to incriminate Mr. Garcia. In fact, with regard to identity-related questions, the Salgado case from 2002 holds that even where an INS agent is questioning a suspected alien, someone who's in custody in a cell, that those questions don't amount to interrogation for Miranda purposes unless they're undertaken in connection with a prosecution for an alienage-related crime or unless the alien is being held for an alienage-related crime. And Salgado is still good law, and I believe it controls in this case. Unless there are any further questions, we sign it. Okay. Thank you. I'll give you a couple of minutes. Thank you, Your Honor. I just want to address a few of the points. First, in response to the contention that these questions were reasonably related, and I don't want to belabor something that the Court already brought up, but the citizenship does not go to the ability to drive, the ownership of the car. And it's, you know, the government said... I don't think they're arguing that. They're saying it wasn't related to the car theft. It was related to identity. Okay, well, I believe... He's taking the position, as I understand it, the government's position is they don't have to be related, as long as they don't unduly prolong. And these were normal identity questions. Well, Your Honor, I don't believe the record. They've submitted evidence that these are standard identity questions. I'm sure there's a score of people that aren't asked what country they're born in or what their citizenship is. And if the touchdown is reasonableness, it's not reasonable to ask those invasive, often offensive questions if they have no grounds to suspect that Mr. Garcia is here without legal permission. And Agent Castillo twice told the district court that he could have booked Mr. Garcia for impersonating another, that he told Mr. Garcia himself, you know, that's a felony. So at that point, he is contemplating criminal investigation.  I don't think Mr. Garcia died as part of a potential criminal investigation. Thank you, Your Honor. Okay, thank you. All right, I appreciate the argument. The case is submitted.
judges: Fisher, Gould, England